UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD ROBERTS,

    Plaintiff,

v.                                                                                Case No. 1:18-cv-162

COMMISSIONER OF SOCIAL                       Hon. Ray Kent
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of January 2, 2009. PageID.831. Plaintiff identified his disabling conditions as a learning disability and problems with his back, lungs and bowel. PageID.836. Prior to applying for DIB, plaintiff completed the 9th grade, and had past employment as a foam gun operator and general laborer. PageID.287, 838. After an adverse administrative decision in 2014, plaintiff filed an appeal in this Court. *See Chad Roberts v. Commissioner*, 1:14-cv-989 (W.D. Mich.). The Court did not address the merits of plaintiff's claim, because the parties entered into a stipulated remand to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). *Id*. (Order and Judgment) (ECF Nos. 9 and 10).

On remand, the Appeals Council directed administrative law judge (ALJ) Ohanesian to address the following matters: (1) "Attempt to obtain the psychological evaluation referenced in Exhibit 22F. If the evaluation is not available or did not occur, then further evaluate

1

the claimant's alleged mental impairments and obtain a medical expert to assist in that evaluation if necessary. Determine whether the claimant's mental impairments are severe and what if any,[work-related] limitations they cause."; (2) "Further evaluate the claimant's malnutrition to determine whether it is severe, meets or equals a Listing and what if any, limitations it causes."; (3) "Give further consideration to the claimant's maximum residual functional capacity and provide rationale with specific references to the evidence of record in support of the assessed limitations"; and, (4) "If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base". PageID.273. On the remand, ALJ Ohanesian held an administrative hearing on February 10, 2016, reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 4, 2016. PageID.273-289. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant

3

work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 2, 2009, and was insured for benefits through June 30, 2016. PageID.276.

At the second step, the ALJ found that plaintiff had severe impairments of: chronic constipation with associated hematochezia and colitis; degenerative disc disease with failed back syndrome; gastroesophageal reflux disease with hematemesis; hypotension; weight loss; sarcoidosis; borderline intellectual functioning; major depressive disorder; and anxiety disorder. PageID.276. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.276.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to extreme cold and vibration and pulmonary irritants. The claimant is limited to standing and/or walking for a maximum of four hours in an eight-hour day. He is limited to performing simple, repetitive, routine tasks with no complex written communication required (reading or writing greater than 50 words at one time) (See Ex. 37E).

PageID.279. The ALJ also found at the fourth step that plaintiff is unable to perform any past relevant work. PageID.287.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.288. Specifically, the ALJ found that plaintiff could perform the requirements of work in the national economy including machine tender (101,000 jobs), light assembler (250,000 jobs), and packager (120,000 jobs). PageID.288. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 2, 2009 (the alleged onset date) through May 4, 2016 (the date of the decision). PageID.288-289.

### III. DISCUSSION

Plaintiff set forth two broad issues on appeal.

**A. The ALJ failed to properly weigh the medical source opinion evidence according to the treating physician rule, 20 C.F.R. § 404.1527(c).**

**1. Dr. Reed**

Plaintiff identified three opinions provided by plaintiff's treating physician Kevin Reed, D.O.: the first opinion in 2011 (PageID.1459-1460); the second opinion in 2013 (PageID.1658-1659); and the third opinion in 2016 (PageID.1955-1956). Plaintiff's Brief (ECF No. 13, PageID.2385-2388). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of

5

time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404,1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff contends that the ALJ failed to properly weigh Dr. Reed's treating source opinions and failed to give good reasons for the "little weight" assigned and that the decision is flawed because "the ALJ does not elaborate as to which portions of the doctors' opinions were being credited, and which were not." *Id*. at PageID.2386. While plaintiff contends that the ALJ did not comply with 20 C.F.R. § 404.1527(c), the only matter explicitly raised by plaintiff is that "[t]he ALJ cites conservative treatment (PageID.284) which contradicts the record considering

6

Mr. Roberts' problems became worth the multiple back surgeries – anything but conservative treatment." Plaintiff's Brief at PageID.2386-2387. Plaintiff is referring to the ALJ's evaluation of Dr. Reed's first opinion dated April 29, 2011.

The ALJ noted that Dr. Reed's medical source statement was nearly identical to one completed on the same date by PA Maurice Fongers:

> On April 29, 2011, primary care provider Mr. Fongers opined the claimant is able to sit frequently (up to eight hours); stand sometimes (continuously up to two hours or occasionally up to six hours); lift up to 10 pounds sometimes (continuously up to two hours or occasionally up to six hours) and never up to 25 pounds; sometimes bend, squat, crawl, kneel, reach over shoulder, push/pull, and stair climb; and frequently grasp bilaterally (Ex. 14F). Mr. Fongers further opined the claimant has a severe limitation with pace and concentration; would miss three or more days per month or be tardy three or more days per month; needs a sit/stand option; needs breaks as symptoms dictate; and would be best suited for part-time work. Mr. Fongers's [sic] opinion is given little weight. Mr. Fongers is not a medically acceptable source and while he was a treating provider, his opinion is not consistent with the overall objective evidence or with his own treatment notes. I note that Mr. Fongers indicated his opinion was based on the April 26, 2011 physical capacity evaluation and that the claimant's conditions are stable. It is further noted that the April 26, 2011 physical capacity evaluation is similar to the above discussed August 2009 evaluation concluding the claimant is capable of a medium exertional level (Ex. 6F/26; 23F). However, the April 26, 2011 evaluation indicates it is reasonable to allow the claimant to work at two and a half hours and gradually work up to eight-hours or at a lower level he may be able to do a full eight-hour day (Ex. 23F). The evaluation also indicates the claimant could frequently sit, kneel, overhead reach, climb stairs, squat repeatedly, walk, crawl, and climb ladders (Ex. 23F/2). Lastly, the evaluation indicates the claimant could occasionally work reaching overhead when standing and occasionally stoop, but never engage in repetitive trunk rotation while sitting. It is unclear by the signature who completed this physical evaluation, but the evaluation suggests the claimant is more capable than opined by Mr. Fonger. As noted, Mr. Fongers' own treatment notes fail to show findings consistent with limitations such as missing three days or more of work per month and limited to only part-time work. For instance, during the April 13, 2011 visit, the claimant was in no acute distress and had normal abdominal, respiratory, and cardiovascular findings (Ex. 22F/18). Mr. Fonger included no musculoskeletal findings that would indicate limitations in exertional level or nonexertional abilities as opined. His ongoing treatment notes contain few findings that would suggest the claimant needs a sit/stand option. The claimant has been observed to have a normal gait, sensation, and reflexes as well as normal muscle strength (Ex. 10F; 13F/12; 22F/40; 31F; 33F).

7

> Also on April 29, 2011, treating provider Dr. Reed completed a medical source statement that is identical as Mr. Fongers (Ex. 18F). The only difference is that Dr. Reed indicated the claimant can never lift, but noted it was by the claimant's report. For the same reasons as above regarding the inconsistency with the physical evaluation and with the overall objective evidence, Dr. Reed's opinion is given little weight. Dr. Reed has prescribed conservative treatment and documented only mild objective findings related to the claimant's back impairment.

PageID.284.

Plaintiff contends that the ALJ incorrectly characterized plaintiff's treatment as conservative, relying on the April 26, 2016 opinion given by Moises S. Googe, D.O., which referenced plaintiff's past failed treatments. PageID.265-266, 2387. However, Dr. Googe's opinion was not part of the administrative record before the ALJ. Accordingly, plaintiff's claim of error will be denied.

### 2. Dr. Bentley

Plaintiff contends that the ALJ performed an insufficient analysis of the opinions of an examining psychologist, Dr. Bentley. The ALJ evaluated Dr. Bentley's opinion as follows:

> In November 2011, the claimant was referred for a psychological evaluation by his representative and was evaluated by Douglas Bentley, EdD (Ex. 20F). Following the evaluation, Dr. Bentley concluded the claimant is presently disabled and he currently could not maintain concentration and memory long enough to hold a job. He further opined the claimant does not have the capability to learn difficult tasks even without the emotional competent of disability and he no longer has the physical ability to return to employment. Dr. Bentley's opinion is given little weight for multiple reasons. First, his opinion regarding the claimant's physical capabilities lies outside of Dr. Bentley's expertise. Second, Dr. Bentley's opinion of total disability is reserved for the Commissioner. The Administrative Law Judge, on behalf of the Commissioner of Social Security, is the ultimate arbiter of work capacity for Social Security purposes, in view of specific definitions used therein. That is, the determination of "disability" is reserved to the Commissioner, delegated to the undersigned, on the basis of the record as a whole. Furthermore, Dr. Bentley's evaluation report does not include many objective findings to support his conclusions that the claimant could not maintain concentration and memory long enough to hold a job. His report documents the claimant drove himself, was pleasant and smiled easily, and maintained good eye contact. The report fails to document a mental status examination or mental capacity testing. Much of the report is based on the claimant's subjective reports. Additionally, the remainder of

8

> the record is inconsistent with total disability based on the claimant's mental health issues. As noted above, there are minimal to no psychiatric complaints and no treatment for mental health issues. While the claimant has been assessed a full scale IQ score of 75, he was able to maintain a semi-skilled job for many years and he has able to perform his activities of daily living independently (Ex. 3E/4; Testimony). Furthermore, during the December 2015 consultative evaluation, the claimant was able to repeat six digits forward and four digits backwards; recall three items out of three after a three-minute delay; name three large cities and name two former presidents; spell the word 'world' backwards; and perform simple calculations and serial three subtractions (Ex. 33F/3-4). The evidence as a whole does not support Dr. Bentley's conclusions, which are given little weight.

PageID.286.

While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). In evaluating such reports, the ALJ's decision "must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). Here, the ALJ gave adequate reasons for the weight assigned to Dr. Bentley's opinion. Accordingly, plaintiff's claim of error will be denied.

### 3. Dr. Lorber

Plaintiff contends that the ALJ failed to acknowledge the testimony of orthopedic surgeon Dr. Lorber, a medical expert who testified in a previous administrative hearing on November 22, 2013. PageID.664-687. Defendant noted that there were discrepancies between Dr. Lorber's opinions expressed in 2013 and the ALJ's RFC evaluation of the evidence on remand which included: (1) Dr. Lorber opined that plaintiff could not crawl, whereas the ALJ found that he could occasionally crawl; (2) Dr. Lorber opined that plaintiff could only occasionally be exposed to moving machinery, whereas the ALJ did not limit this exposure; and (3) Dr. Lorber

9

opined that plaintiff could have no exposure to vibration, concentrated fumes, and extreme temperatures, whereas the ALJ opined that he should avoid concentrated exposure to these conditions. *Compare* PageID.675 *with* PageID.279. Defendant contends that this was harmless error because none of the jobs which the ALJ cited at step five require crawling or exposure to extreme temperatures, vibration, atmospheric conditions, moving machinery, or toxic caustic chemicals. Defendant's Brief (ECF No. 14, PageID.2404).

The Court disagrees with defendant's contention that this was harmless error. Dr. Lorber's opinion was relevant to plaintiff's condition as it existed in 2013. The previous ALJ gave Dr. Lorber's opinion great weight because it was well reasoned, detailed, supported by specific medical reports. PageID.95. With respect to defendant's claim of harmless error, nothing in the ALJ Ohanensian's decision or the VE's testimony address whether a person with the limitations described by Dr. Lorber could perform the identified jobs (machine tender, light assembler, and packager). The agency recognized that Dr. Lorber was a credible medical expert during plaintiff's administrative hearing in 2013. Based on this record, the Court concludes that the ALJ should have considered or re-evaluated Dr. Lorber's on remand. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Lorber's opinion.

> **B. The Commissioner failed to adequately consider the new and material evidence.**

Plaintiff contends that this matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further consideration of new and material evidence located at PageID.265-269 (a report from neurologist Dr. Moises Googe dated April 26, 2016) and PageID.2235-2364 (Exhs. 51F (Dr. Googe's report with CT scans from April 30, 2016) and 52F (laboratory reports from May 2, 2016). Plaintiff's Brief (ECF No. 13, PageID.2392). When a plaintiff submits

evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id*. "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Plaintiff's materiality argument is linked to his claim that the ALJ incorrectly characterized plaintiff's past treatment as conservative. In the April 2016 report, Dr. Googe stated that "[s]ince [plaintiff] has completed every other avenue of conservative and surgical treatment, the only option left would be a laminectomy, decompression and fusion." PageID.2236. The doctor also stated that "given that [plaintiff] has had several surgeries and scar tissue and chronic nerve compression, that may limit the functional recovery." *Id*. This evidence reflected plaintiff's

condition in April and May 2016, after the administrative hearing (February 10, 2016) and before the ALJ's decision denying benefits (May 4, 2016). Based on this record, the Court concludes that plaintiff has demonstrated materiality because ALJ Ohanesian may have reached a different determination if he had considered this new evidence.

In addition, plaintiff has shown good cause for failing to present this evidence to the ALJ in a timely manner. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Here, plaintiff has explained that the new evidence did not exist at the time of the administrative hearing. Rather, the new evidence involved ongoing medical treatment, including emergency treatment, after the hearing. Plaintiff's Brief (ECF No. 13, PageID.2392-2393). Given this timeline, plaintiff has demonstrated good cause. Accordingly, plaintiff's request for a sentence-six remand will be granted. The Commissioner should review this new evidence in conjunction with the sentence-four remand.

## IV.   CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentences four and six of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Lorber's opinions expressed at the November 22, 2013 administrative hearing. In addition, the Commissioner should evaluate the new evidence identified

12

by plaintiff at PageID.265-269 and PageID.2235-2364. A judgment consistent with this opinion will be issued forthwith.

Dated:  March 25, 2019                          /s/ Ray Kent
                                                United States Magistrate Judge